[No. 70264-1. En Banc.]
Argued May 15, 2001. Decided October 11, 2001.

THE CITY OF KENT, *Petitioner*, v. RICHARD BEIGH, *Respondent*.

MADSEN, JOHNSON, IRELAND, and BRIDGE, JJ., dissent by separate opinion.

*Roger A. Lubovich, City Attorney,* and *Derek M. Smith, Assistant,* for petitioner.

*David R. Kirshenbaum,* for respondent.

*Christine O. Gregoire, Attorney General,* and *Jerald R. Anderson* and *Carol A. Smith-Merkulov, Assistants,* on behalf of Department of Licensing, amicus curiae.

*Russell D. Hauge, Prosecuting Attorney for Kitsap County,* and *Randall A. Sutton, Deputy,* on behalf of Washington Association of Prosecuting Attorneys, amicus curiae.

SANDERS, J. — Division One of the Court of Appeals affirmed a ruling that suppressed the results of an alcohol blood test in a driving under the influence case. We affirm the result reached by Division One but for different reasons.

The first question is whether RCW 46.20.308(3) provides the sole authority for an officer to request a motorist to submit to a blood test. A plain reading of the implied consent statute reveals that it does not.

The second question is whether a motorist whose breath twice registers an "interference detected" during a breath alcohol test is deemed to have a physical injury, incapacity, or limitation which prevents him from providing a breath sample. We think not.

### FACTS

Officer Dexheimer of the Kent City Police Department arrested Richard Beigh for driving under the influence. Mr. Richard Beigh was advised of his *Miranda* warnings,[1] transported to the Kent jail, and given the implied consent warnings for a breath test. Beigh agreed to submit to the breath test.

Officer Dexheimer, who had six years of operational experience with the BAC Datamaster machine and was trained as an instructor in the machine's use, administered the test. The officer attempted to get a BAC reading on Beigh's breath three times. The first attempt failed: the machine indicated there was an "interference detected." Officer Dexheimer testified this was the result of a built-in safety feature of the machine which is designed to protect people who have an alcohol-like substance on their breath from registering an erroneous BAC level. The officer indicated acetone on a diabetic's breath could cause the ma-

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

chine to display the "interference detected" message. During the course of the next 30 minutes Officer Dexheimer, on two separate occasions, attempted to get a reading on Beigh's breath. Each time he got the same result: the machine posted the message "interference detected."

Officer Dexheimer determined Beigh was physically unable to give a breath sample because of the interfering substance on his breath and consequently he advised Mr. Beigh of his implied consent warning for a blood test. Mr. Beigh agreed to the blood test and he was transported to Auburn Hospital where the sample was drawn by a qualified individual.

The trial court judge granted Beigh's motion to suppress the results of the blood test. The City of Kent challenged the ruling by writ of review to King County Superior Court. The superior court denied the writ, remanding to municipal court. The City of Kent then appealed to the Court of Appeals.

Division One, in a published opinion, affirmed. *City of Kent v. Beigh*, 102 Wn. App. 269, 6 P.3d 1211 (2000). The appellate court held Officer Dexheimer did not have the authority to ask Beigh to submit to a blood test since Mr. Beigh did not satisfy any of the exceptions enumerated in RCW 46.20.308(2). The court opined, "RCW 46.20.308(3) provides the only exceptions where a blood test should be used instead of a breath test." *Id.* at 274. The City of Kent then sought review in this court, which we granted.

The city presents two issues on review: (1) whether RCW 46.20.308(3) provides the exclusive authority for administering a blood test rather than a breath test on an individual arrested for driving while intoxicated; and (2) whether a person who is incapable of providing a *valid* breath sample under WAC 448-13-055 is *physically* incapable of a breath sample under RCW 46.20.308(2).

Issue I

Every person who operates a motor vehicle within the

state of Washington is deemed to have given his consent to submit to a test or tests of his breath or blood in the event he is arrested for suspicion of driving while intoxicated. RCW 46.20.308(1). RCW 46.20.308(3) states:

> Except as provided in this section, the test administered shall be of the breath only. If an individual is unconscious or is under arrest for the crime of vehicular homicide as provided in RCW 46.61.520 or vehicular assault as provided in RCW 46.61.522, or if an individual is under arrest for the crime of driving while under the influence of intoxicating liquor or drugs as provided in RCW 46.61.502, which arrest results from an accident in which there has been serious bodily injury to another person, a breath or blood test may be administered without the consent of the individual so arrested.

RCW 46.20.308(3). None of these exceptions applies here. Mr. Beigh was not unconscious when he was arrested. Nor was his arrest the result of a vehicular homicide, a vehicular assault, or an accident resulting in the serious bodily injury of another. *Beigh*, 102 Wn. App. at 273. Notwithstanding, the Court of Appeals erred when it determined a blood test may be administered only under the circumstances enumerated in RCW 46.20.308(3).

■■ "If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself." *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 807, 16 P.3d 583 (2001). The plain language of the statute reads, "Except as provided in this *section*, the test administered shall be of the breath only." RCW 46.20.308(3) (emphasis added). It was error for Division One to conclude RCW 46.20.308(3) is the exclusive source of exceptions to the breath test rule. RCW 46.20.308(3) is not a *section* at all; rather it is a *subsection* of RCW 46.20.308.

"The number of each section of [the RCW] is made up of three parts, in sequence as follows: Number of title; number of chapter within the title; number of section within the chapter. Thus RCW 1.04.020 is Title 1, chapter 4, section 20." *Preface* to REVISED CODE OF WASHINGTON at iii (2000). Similarly, RCW 46.20.308 is Title 46, chapter 20, section

308. RCW 46.20.308(3) is a *subsection* of RCW 46.20.308. Therefore the language "[e]xcept as provided in this section" found in RCW 46.20.308(3) encompasses ALL of section 308 and its 11 subsections.

 "The word 'section' is ordinarily used to denote a separately numbered part of a statute, including all subdivisions or paragraphs . . . ." *Groves v. Meyers*, 35 Wn.2d 403, 406, 213 P.2d 483 (1950). However there are exceptions. We ultimately determined in *Groves* the term "section" was not used in its ordinary sense, thus giving "effect to the rule that a statute should, if possible, be so construed that no clause, sentence or word shall be superfluous, void, or insignificant." *Id.* at 407.

 But here there is no need to interpret the term "section" in its nonordinary sense—quite the contrary, to do so would render portions of RCW 46.20.308(2) superfluous, void, or insignificant. RCW 46.20.308(2) provides a *breath* test shall be administered at the direction of a law enforcement officer in certain situations. RCW 46.20.308(2). The subsection goes on to state:

> However, in those instances where the person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample or where the person is being treated in a hospital, clinic, doctor's office, emergency medical vehicle, ambulance, or other similar facility in which a breath testing instrument is not present or where the officer has reasonable grounds to believe that the person is under the influence of a drug, *a blood test shall be administered by a qualified person as provided in RCW 46.61.506(4).* . . .

*Id.* (emphasis added). If we were to hold that a blood test may not be administered except as provided in RCW 46.20.308(3), we would effectively render much of RCW 46.20.308(2) a nullity. This is inconsistent with "the rule that a statute should, if possible, be so construed that no clause, sentence or word shall be superfluous, void, or insignificant." *Groves*, 35 Wn.2d at 407; *see also DGHI Enters. v. Pac. Cities, Inc.*, 137 Wn.2d 933, 941, 977 P.2d 1231 (1999) (" 'A statute should be so construed that, if it

can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.' " (quoting *Martin v. Dep't of Soc. Sec.*, 12 Wn.2d 329, 332, 121 P.2d 394 (1942))).

Moreover the rule enunciated in *Beigh* that blood tests may be administered only under RCW 46.20.308(3) is inconsistent with other decisions from this Court and from the various divisions of the Court of Appeals interpreting RCW 46.20.308.

Division One has on at least two prior occasions decided cases where the authority for administering a blood test did not come from RCW 46.20.308(3). The authority in *O'Neill v. Department of Licensing*, 62 Wn. App. 112, 813 P.2d 166 (1991) came from RCW 46.20.308(2). O'Neill was arrested for driving while intoxicated (DWI) after a single vehicle collision in which his passenger was injured. *O'Neill*, 62 Wn. App. at 114-15. He was transported to the hospital where the arresting officer read O'Neill his implied consent warnings and asked him to submit to a blood test. *Id.* Division One reviewed the language of RCW 46.20.308(2) and observed:

> Although the statute allows an arresting officer to request both breath and blood tests, it does not leave the choice between the two to the arresting officer's discretion. Instead, it states specific conditions which must be met before a blood test may be administered in lieu of a less intrusive breath test.

*O'Neill*, 62 Wn. App. at 120. "[W]here there is an issue of fact on the presence of a Breathalyzer at a particular medical facility, the State has the burden to prove that one was not present." *Id.* at 121.

Division One reached a similar conclusion in *Mairs v. Department of Licensing*, 70 Wn. App. 541, 854 P.2d 665 (1993). Mary Mairs was arrested for DWI following a single vehicle accident in which she was injured. *Mairs*, 70 Wn. App. at 542. At the hospital the arresting officer asked Mairs to submit to a blood test. *Id.* at 543. She refused and the Department of Licensing suspended her license. *Id.* at 542-43. Mairs sought de novo review and the superior court

determined a suitable breath testing device was present at the hospital and therefore the arresting officer did not have the authority to ask Mairs to submit to a blood test pursuant to RCW 46.20.308(2). On appeal Division One examined the language of RCW 46.20.308 and found,

> Pursuant to the statute, a person arrested for DWI cannot be asked to take a blood test for blood alcohol content unless "[t]he person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample; or (b) as a result of a traffic accident the person is being treated for a medical condition in a hospital, clinic, doctor's office, or other similar facility in which a breath testing instrument is not present . . . ."

*Mairs*, 70 Wn. App. at 547 (quoting former RCW 46.20.308(2)(a) (1989)). The Court of Appeals determined "the trial court erred in concluding that a suitable breath testing instrument was available at the hospital when Mairs was asked to take the blood test." *Id.* at 549. Thus *Mairs* supports the proposition that an officer may ask a motorist to submit to a blood test under RCW 46.20.308(2).[2]

Division Two has also recognized an officer may request a blood test pursuant to RCW 46.20.308(2). *See Shelden v. Dep't of Licensing*, 68 Wn. App. 681, 845 P.2d 341 (1993). On appeal Shelden argued the trooper who asked him to submit to a blood test failed to meet the requirements in RCW 46.20.308(2). *Id.* at 685-86. The Court of Appeals agreed and found that while Shelden was certainly "being treated" in a medical facility, there was no evidence to suggest the hospital did not have a breath analysis instrument. *Id.* at 686-87. Consequently Division Two found "[t]he

---

[2] According to *Beigh* the discussion of RCW 46.20.308(2) in *Mairs* constitutes an inaccurate statement of the law. *City of Kent v. Beigh*, 102 Wn. App. 269, 273 n.1, 6 P.3d 1211 (2000). *Beigh* asserts in citing former RCW 46.20.308 (1989) *Mairs* "omitted the critical qualifying sentence that where the stated conditions are met 'a blood test shall be administered by a qualified person as provided in RCW 46.61.506(4).'" *Id.* (quoting former RCW 46.20.308(2) (1989)). What, exactly, is critical about that sentence is unclear. Granted it specifies *who* will administer the blood test, but it does nothing to change the fact that the immediately preceding sentences dictate a set of circumstances *when* a blood test may be administered in lieu of a breath test.

State failed to meet its burden to establish the statutory conditions precedent to requiring a blood test." *Id.* at 687.

Our decision in *Department of Licensing v. Lax*, 125 Wn.2d 818, 888 P.2d 1190 (1995) addresses a tangentially related issue. We said under RCW 46.20.308 when an officer has reason to believe a person has been driving while intoxicated "a breath test or, under some conditions, a blood test shall be administered for the purpose of determining alcohol content." *Id.* at 821. We further observed that if the person refuses to provide a sample, " *'no test shall be given* except as authorized under subsection (3) or (4) of [RCW 46.20.308].' " *Id.* (quoting former RCW 46.20.308(5) (1989)).

Finally, it would be inconsistent with our decision in *State v. Baity*, 140 Wn.2d 1, 18, 991 P.2d 1151 (2000) to conclude an officer may ask a motorist to submit to a blood test only under the circumstances enumerated in RCW 46.20.308(3). *Baity* determined DRE (Drug Recognition Expert) evidence is admissible under *Frye*[3] and held, "A properly qualified expert may use the 12-step protocol and the chart of categories of drugs to relate an opinion about the presence or absence of certain categories of drugs in a suspect's system." *Baity*, 140 Wn.2d at 18. Step 12 of that protocol is a toxicology analysis which necessarily involves a blood test as there is no approved breath test for drugs.

However to hold a drug toxicology analysis can be performed only if the driver were arrested pursuant to RCW 46.20.308(3) would ignore the plain language of RCW 46.20.308(2) which states, "However . . . where the officer has reasonable grounds to believe that the person is under the influence of a drug, a blood test shall be administered by a qualified person as provided in RCW 46.61.506(4)."

██ We find neither RCW 46.20.308(2) nor RCW 46.-20.308(3) provides exclusive authority for an officer to request a person arrested for driving while under the influence to submit to a blood test rather than a breath test. Properly interpreted RCW 46.20.308(2) establishes those

---

[3] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

instances in which a driver is given the choice between either (A) submitting to a test of his breath or blood (depending on the circumstances) or (B) losing his license. RCW 46.20.308(3) on the other hand outlines those circumstances in which a test of breath or blood may be administered without the driver's consent. This interpretation is supported by RCW 46.20.308(5), which provides:

> If, following his or her arrest and receipt of warnings under subsection (2) of this section, the person arrested refuses upon the request of a law enforcement officer to submit to a test or tests of his or her breath or blood, no test shall be given except as authorized under subsection (3) or (4) of this section.

The Court of Appeals in *Beigh* erred when it determined RCW 46.20.308(3) provides exclusive authority for administering a blood test in lieu of a breath test. The language "[e]xcept as provided in this section" applies to ALL of RCW 46.20.308 and is not limited to those instances enumerated in subsection (3). To hold otherwise would contradict the rules of statutory construction and would be inconsistent with *Lax*, *Shelden*, *Mairs*, and *O'Neill*.

## Issue II

The City of Kent further argues Beigh was physically incapable under RCW 46.20.308(2) of providing a valid breath test and therefore it was appropriate for Officer Dexheimer to request Beigh to submit to a blood test. Beigh argues he was physically capable of providing a breath sample pursuant to RCW 46.20.308(2) and consequently the officer had no right to ask him to submit to a blood test.

The issue turns on whether a motorist arrested for suspicion of driving while under the influence is deemed to have a "physical injury, physical incapacity, or other physical limitation" (*id.*) that prevents him from providing a breath sample when the sample he provides, on two or more successive attempts, registers an "interference detected" on the BAC DataMaster.

The legislature has delegated to the state toxicologist the

responsibility of setting the standards to be utilized in breath and blood testing, and procedures for regulating the individuals who conduct such tests. RCW 46.61.506(3).

The only breath test instrument approved by the state toxicologist is the BAC DataMaster. WAC 448-13-020. Pursuant to mandate from the legislature the state toxicologist set forth rules and regulations with respect to administering a breath test on the BAC DataMaster. WAC 448-13-040. These rules dictate how to perform a test and what constitutes a valid test. *See generally* Title 448 WAC.

The city draws our attention to WAC 448-13-055 to support its position that Mr. Beigh was physically incapable of providing a breath sample:

> If during a breath test, an interference is detected, this will invalidate the test. If a breath test document is produced which notes the presence of an interference, the breath test will not be valid. The subject will be required to repeat the test. A subject whose breath registers the presence of an interference on two or more successive breaths shall be presumed to be incapable of providing a valid breath sample.

WAC 448-13-055. The city argues Mr. Beigh could not give a valid breath test because the three breath samples he provided all resulted in the DataMaster's noting the presence of an interference thus rendering the results invalid, and because under *State v. Brokman*, 84 Wn. App. 848, 852, 930 P.2d 354 (1997) no test occurs unless a valid test occurs.

However *Brokman* is easily distinguished. At issue in *Brokman* was whether police had the authority to administer a second breath test after they discovered the BAC Verifier DataMaster used on the prior test was malfunctioning. *Id*. at 849-50. *Brokman* concluded the plain language of the implied consent statute contemplates multiple tests and therefore it was appropriate for the officer to conduct an additional test. *Id*. at 853. What was not before the court, and what it therefore had no authority to decide, was whether an officer is authorized to conduct a blood test if the breath test fails.

Just because a subject cannot provide a *valid* breath sample under WAC 448-13-055 it does not necessarily follow that he is *physically* incapable of providing a breath sample for purposes of RCW 46.20.308. Even the city concedes "there was nothing wrong with Beigh's respiratory system that would have rendered him incapable of pushing sufficient breath through the BAC Datamaster [sic] instrument," Pet. for Review at 14.

Moreover the city's position is undermined by the language of WAC 448-13-040 which sets forth the regulations for conducting a breath test. WAC 448-13-040 states in part:

> If a subject is wearing jewelry or ornamentation pierced through their tongue, lips, cheek, or other soft tissues in the oral cavity, they will be required to remove this prior to conducting the breath test. If the subject declines, they will be deemed to have a *physical limitation* rendering them incapable of providing a valid breath sample and will be required to provide a blood sample under the implied consent statute, RCW 46.20.308.

WAC 448-13-040 (emphasis added).

The state toxicologist could have written a similar provision into WAC 448-13-055 but chose not to. That provision simply states, "A subject whose breath registers the presence of an interference on two or more successive breaths shall be presumed incapable of providing a valid breath sample." Unlike WAC 448-13-040 nothing in WAC 448-13-055 suggests the subject will be deemed to have a *physical* incapacity or limitation for purposes of RCW 46.20.308.

It is well settled that "[r]ules of statutory construction apply to administrative rules and regulations, particularly where . . . they are adopted pursuant to express legislative authority." *State v. Burke*, 92 Wn.2d 474, 478, 598 P.2d 395 (1979) (citing *Hayes v. Yount*, 87 Wn.2d 280, 552 P.2d 1038 (1976)). Moreover "it is an 'elementary rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent.' " *State v. Enstone*, 137 Wn.2d

675, 680-81, 974 P.2d 828 (1999) (quoting *United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984)).

This rule resolves the matter in favor of Mr. Beigh. The state toxicologist determined a subject's refusal to remove a tongue ring creates the presumption that he has a *physical* limitation preventing him from providing a breath sample for purposes of RCW 46.20.308. However no such presumption arises when the BAC DataMaster registers an "interference detected" on two or more successive attempts. Under *Enstone* we must conclude where the state toxicologist uses certain language in one instance and not in another, the difference is intentional.

The implied consent statute is clear and unambiguous. "If a statute is unambiguous this Court is required to apply the statute as written and ' "assume that the legislature mean[t] exactly what it says." ' " *State v. Radan*, 143 Wn.2d 323, 330, 21 P.3d 255 (2001) (alteration in original) (quoting *In re Custody of Smith*, 137 Wn.2d 1, 9, 969 P.2d 21 (1998) (quoting *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995)). *See also Enstone*, 137 Wn.2d at 682 (" 'When the words in a statute are clear and unequivocal, this court must apply the statute as written.' " (quoting *State v. Michielli*, 132 Wn.2d 229, 237, 937 P.2d 587 (1997))). The general rule under the implied consent statute is that a breath test will be administered to persons arrested for DWI. RCW 46.20.308(2). However an officer may request a motorist to submit to a blood test "where the person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample." *Id*.

It is undisputed there was nothing wrong with Beigh's respiratory system which would prevent him from filling the DataMaster with air. If Beigh has the physical ability to fill the BAC DataMaster with his breath, he meets the requirements of RCW 46.20.308(2) and it was therefore inappropriate for Officer Dexheimer to request Beigh to submit to a blood test.

CONCLUSIONS

It was error for Division One to determine RCW 46.20.308(3) provides the only authority under which an officer may request a motorist to submit to a blood test rather than a breath test. Nevertheless we affirm the result. RCW 46.20.308(2) permits an officer to request a motorist to submit to a blood test when the motorist has a physical injury, physical incapacity, or physical limitation which prevents him from providing a breath test. However the fact that a motorist on two or more successive attempts provides a sample in which the BAC DataMaster detects the presence of an "interference" does not mean the motorist is physically incapable of providing a sample.

The Court of Appeals is affirmed. The results of Mr. Beigh's blood test are suppressed and the matter is remanded to the Kent Municipal Court for further appropriate proceedings.

ALEXANDER, C.J., and SMITH, CHAMBERS, and OWENS, JJ., concur.

MADSEN, J. (dissenting) — The majority holds, and I agree, that RCW 46.20.308(3) does not provide the sole authority for an officer to request that a motorist submit to a blood test. I believe that RCW 46.20.308(2) provides additional exceptions. It places an affirmative duty on police officers to request a motorist suspected of driving under the influence to submit to a blood test if the motorist has a "physical injury, physical incapacity, or other physical limitation" making the motorist incapable of providing a breath sample. RCW 46.20.308(2).

I disagree, however, with the majority's second holding that a motorist whose breath three times caused a BAC Verifier DataMaster to report "interference detected" is not deemed to have a "physical incapacity, or other physical limitation, of providing a breath sample" as defined in RCW 46.20.308(2). Accordingly, I dissent.

## DISCUSSION

RCW 46.20.308(2) provides that "a blood test shall be administered" in those instances "where the person is incapable due to physical injury, physical incapacity, or other physical limitation, of providing a breath sample." WAC 448-13-055 provides that a "subject whose breath registers the presence of an interference on two or more successive breaths shall be presumed to be incapable of providing a valid breath sample."

The City of Kent argues that Richard Beigh's breath caused the BAC DataMaster to report "interference detected," demonstrating that he was physically incapable under RCW 46.20.308(2) of providing a valid breath test and therefore Officer Dexheimer had a duty to request that Beigh submit to a blood test. The clear language of the statutes and the relevant WACs, the stated legislative intent underlying this State's implied consent laws, and plain logic support the city's position.

The majority argues that since WAC 448-13-055 does not explicitly state that the subject will be deemed to have a physical incapacity or physical limitation, then there can be no presumption that the subject has a physical incapacity or physical limitation preventing him from providing a breath sample for purposes of RCW 46.20.308. Therefore, the majority says, no blood test is authorized. Majority at 45-46. The majority's argument rests exclusively on the fact that another administrative code, WAC 448-13-040, explicitly states that a subject with jewelry in his or her mouth who declines to remove it before providing a breath sample " 'will be deemed to have a *physical limitation* rendering them incapable of providing a valid breath sample and will be required to provide a blood sample under the implied consent statute, RCW 46.20.308,' " while WAC 448-13-055 uses the word "incapacity" rather than physical limitations. Majority at 45 (quoting WAC 448-13-040). The majority then quotes *State v. Enstone*, 137 Wn.2d 675, 680-81, 974 P.2d 828 (1999) which asserts that " 'it is an "elementary

rule that where the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." ' " Majority at 45-46; *Enstone,* 137 Wn.2d at 680-81 (quoting *United Parcel Serv., Inc. v. Dep't of Revenue,* 102 Wn.2d 355, 362, 687 P.2d 186 (1984) (citing *Seeber v. Pub. Disclosure Comm'n,* 96 Wn.2d 135, 139, 634 P.2d 303 (1981))).

Initially, it is unclear why the majority believes that the language of a WAC reflects a legislative choice. But, assuming that the majority's use of statutory construction rules is appropriate, there is an equal, if not superior, rule of construction that courts will not interpret a statute so as to render any part of the language superfluous. *Cf. Svendsen v. Stock,* 143 Wn.2d 546, 23 P.3d 455 (2001). The plain purpose of WAC 448-13-055 is to specify one instance in which a person is deemed incapable of giving a breath sample. The only reason to specify that a person is deemed incapable of giving a breath sample is to establish the basis for a blood test. Thus, a person whose breath registers an interference will be deemed incapable of giving a breath sample and will be subject to the blood test requirement. Under the majority's interpretation, however, WAC 448-13--055 serves absolutely no purpose because the fact that the person is deemed incapable of giving a breath sample will not result in a blood test.

Rules of construction are tools to discern Legislative intent, not to subvert it. This court found that RCW 46-.20.308 has a threefold purpose "(1) to discourage individuals from driving an automobile while under the influence of intoxicants, (2) to remove the driving privileges from those individuals disposed to driving while inebriated, and (3) to provide an efficient means of gathering reliable evidence of intoxication or nonintoxication." *Nowell v. Dep't of Motor Vehicles,* 83 Wn.2d 121, 124, 516 P.2d 205 (1973).

The Legislature has made it very clear that by operating a motor vehicle a person is deemed to have consented to a test of his or her breath or blood. To hold that repetitive readings of "interference detected" are not a "physical incapacity or a physical limitation" to providing a breath

sample punches a hole in RCW 46.20.308 and will thwart the Legislative intent we found in it 28 years ago.

Even without WAC 448-13-055, logic requires a finding that Mr. Beigh was physically incapable of giving a breath sample. The majority says, "[j]ust because a subject cannot provide a *valid* breath sample under WAC 448-13-055 it does not necessarily follow that he is *physically* incapable of providing a breath sample for purposes of RCW 46.20.308." Majority at 45. The majority's position rests heavily on Beigh's apparently normal respiratory system. However, Officer Dexheimer testified that when the BAC DataMaster registers an interfering substance it has to do with the subject's breath containing substances similar to the chemical makeup of alcohol, such as when "a person that might be drinking isopropyl alcohol, or somebody who is diabetic and has acetone on their breath from that." Verbatim Report of Proceedings at 7. The makeup of someone's breath is a physical trait, independent of the respiratory system that renders the individual incapable of providing a breath sample for the purpose of RCW 46.20.308(2).

In this case, the BAC DataMaster reported "interference detected" on each of the three breath samples that Beigh submitted. The evidence at trial was that the BAC Datamaster was working properly, Officer Dexheimer used it properly, and Beigh was trying to provide a valid breath test. Given the interference safeguard built into the BAC DataMaster to protect people from being convicted for having alcohol-like substances in their system, the only logical conclusion is that Beigh had a physical incapacity or other physical limitation preventing him from providing a valid breath sample.

Finally, the majority's argument is easily answered: the use of the words "physical incapacity" in connection with mouth jewelry and only "incapacity" with regard to interference implies that the Legislature intended different results. In the case of a subject wearing jewelry in his or her mouth, the state toxicologist has determined that a breath test shall not be performed until the subject removes the

jewelry from the mouth. The toxicologist needed to promulgate a rule to address how to treat a subject who refuses to remove jewelry from the mouth. Subjects refusing to remove the jewelry from their mouths, who never attempt to give a breath sample, logically cannot be *assumed* to have a physical limitation rendering them incapable of providing a valid breath sample. Thus, WAC 448-13-040 was needed to allow a *presumption* of a physical limitation to achieve the legislative intent of RCW 46.20.308(2) since such a subject would not ordinarily be considered to have a *physical limitation* rendering them incapable of providing a breath sample.

The only impediments to the subject's providing a valid breath sample are the (1) state toxicologist's decision to require the jewelry be removed before a breath sample can be taken and (2) the subject's refusal to cooperate and remove the jewelry. Neither of these impediments can be properly categorized as "physical." In contrast, a subject whose breath registers the presence of interference on two or more successive breaths will be understood to have a physical incapacity or physical limitation and there is no need for a rule to presume a physical incapacity or limitation.

## CONCLUSION

In summary, WAC 448-13-055 makes it clear that Officer Dexheimer correctly presumed that Beigh was incapable of providing a valid breath sample. The legislative intent underlying the implied consent statute is to obtain either a breath or blood sample from subjects suspected of driving under the influence. As the City of Kent points out, if a valid breath test is not possible then there is implied consent for a blood sample. RCW 46.20.308(2) placed an affirmative duty on Officer Dexheimer to request Beigh, a motorist

suspected of driving under the influence, to submit to a blood test.

For these reasons, I dissent.

JOHNSON, IRELAND, and BRIDGE, JJ., concur with MADSEN, J.