187 P.3d 311 (2008)
Lea HUDSON, individually, Respondent,
v.
Clifford and "Jane Doe" HAPNER, individually and the marital community composed thereof; and Matthew Norton, a Washington corporation, Appellants.
No. 35797-6-II.
Court of Appeals of Washington, Division 2.
July 8, 2008.
*312 Elizabeth Ann Jensen, Attorney at Law, Fircrest, WA, Marilee C. Erickson, Reed McClure, Seattle, WA, for Appellants.
Benjamin Franklin Barcus, Kari Ingrid Lester, Ben F. Barcus & Associates PLLC, Tacoma, WA, for Respondent.
ARMSTRONG, J.
¶ 1 We granted discretionary review to consider whether a party who requests a trial de novo after arbitration, obtains an unfavorable judgment at trial, and then successfully appeals that judgment may, before the second trial, withdraw his request for the trial de novo. Because the policy behind Mandatory Arbitration Rule (MAR) 7.3 requires us to favor the original arbitration award over continued litigation, we hold that the party may withdraw the request; therefore, we reverse the trial court's order striking the withdrawal of the trial de novo request and we remand for entry of judgment on Clifford Hapner's notice of presentment.

FACTS
¶ 2 In 1998, Clifford Hapner drove his vehicle into the rear of Lea Hudson's vehicle. Hudson sued Hapner, his wife, and his employer, Matthew Norton Corporation,[1] and the case went to mandatory arbitration. The arbitrator awarded Hudson $14,538 in damages, after which Hapner timely requested a trial de novo under RCW 7.06.050(1). In 2003, a jury awarded Hudson $292,298. Hapner appealed, arguing successfully that the trial court improperly excluded his expert's testimony. We remanded for a new *313 trial. Hudson v. Hapner, No. 30619-1-II, 2005 WL 834433, at *5 (Wash.Ct.App. April 12, 2005).
¶ 3 After remand, Hapner obtained further discovery about Hudson's ongoing medical treatment and expenses arising from the accident. He then filed a notice of voluntary withdrawal of his request for trial de novo. He also filed a notice of presentment for the court to enter judgment on the arbitration award along with (1) interest, (2) attorney fees incurred by Hudson at trial and on appeal, and (3) taxable costs. Hudson moved to strike Hapner's withdrawal of his trial de novo request, arguing that Hapner had waived his right to withdraw his request. The trial court granted Hudson's motion, striking Hapner's presentation of judgment and withdrawal of request for trial de novo. We granted Hapner's motion for discretionary review.

ANALYSIS
¶ 4 Any party to an arbitration proceeding may file a request for a trial de novo in the superior court within 20 days after the arbitrator files his decision. RCW 7.06.050(1); MAR 7.1(a). If the party voluntarily withdraws his request for a trial de novo, the court may impose costs and reasonable attorney fees against him. RCW 7.06.060(1); MAR 7.3.[2] Hapner argues that under these rules, he had a right to unilaterally withdraw his request for a trial de novo at any time, conceding that in doing so he must pay Hudson's fees and costs. Interpreting the MARs is a matter of law that we review de novo. Manius v. Boyd, 111 Wash. App. 764, 766-67, 47 P.3d 145 (2002).
A. Unilateral Withdrawal
¶ 5 The parties first dispute whether a party who has requested a trial de novo may unilaterally withdraw that request. Hapner relies on Thomas-Kerr v. Brown, 114 Wash. App. 554, 559 n. 16, 59 P.3d 120 (2002), in which Division One held that MAR 7.3 provides an implied right to unilaterally withdraw a request for a trial de novo. Hudson responds that Thomas-Kerr was erroneously decided and that a party may withdraw his request for a trial de novo only with court permission. She reasons that because a trial de novo is treated as an appeal, see Singer v. Etherington, 57 Wash.App. 542, 546, 789 P.2d 108 (1990), we should import the court permission requirement from the Rules of Appellate Procedure (RAPs) and the Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJs).[3]
¶ 6 Hudson's argument is not persuasive. First, the RAPs and RALJs apply only to those proceedings designated in RAP 1.1 and RALJ 1.1(a), respectively, and the present case does not fall within the scope of either rule. Second, had the Supreme Court and legislature intended a similar permission requirement for withdrawing a trial de novo request, they would have included such language in MAR 7.3. See City of Kent v. Beigh, 145 Wash.2d 33, 45, 32 P.3d 258 (2001) (where the legislature uses certain statutory language in one instance and different language in another, there is a difference in legislative intent). In addition, use of the word "withdraws" in MAR 7.3, which denotes an action by a party, instead of "dismissal" (an action by the court), demonstrates that the party who initiated the trial de novo has control of its continuation.
¶ 7 Furthermore, allowing the requesting party to withdraw is most consistent with the legislature's clear preference for resolving disputes through arbitration rather than through judicial proceedings. See Nevers v. Fireside, Inc., 133 Wash.2d 804, 809, 947 P.2d 721 (1997) (as with any other court rule, court construes the mandatory arbitration rules in accord with their purpose). The purpose of mandatory arbitration is to reduce court congestion of civil cases. Malted Mousse, Inc. v. Steinmetz, 150 Wash.2d 518, 526, 79 P.3d 1154 (2003). Specifically, MAR 7.3 is intended to encourage parties to accept the arbitrator's award by penalizing unsuccessful appeals from them. Walji v. Candyco, *314 Inc., 57 Wash.App. 284, 290, 787 P.2d 946 (1990).
¶ 8 As Division One stated in Do v. Farmer, 127 Wash.App. 180, 187, 110 P.3d 840 (2005), "MAR 7.3 uses both a stick and a carrot to accomplish its goal":
First, the rule threatens mandatory attorney fees for any party who requests a trial de novo but does not improve its position. Next, it offers the party an incentive to withdraw its request, with the possibility of avoiding attorney fees at the discretion of the [trial] court. Both the stick and the carrot are directed at the party requesting the trial de novo, attempting to influence its choices in the hope of reducing court congestion.
Do, 127 Wash.App. at 187, 110 P.3d 840. As Hapner states, "[He] chose the `carrot'" by withdrawing his trial de novo request. Br. of Appellant at 13.
¶ 9 In contrast, Hudson's proposal to nullify the original arbitration award and force a trial would accomplish the opposite of what the legislature intended: continued contribution to court congestion. Hudson does not have any right to a trial de novo merely because Hapner requested one; to the contrary, for Hudson to preserve her right to a trial de novo, she must have filed her own request within the 20-day period prescribed in MAR 7. 1. Thomas-Kerr, 114 Wash.App. at 560, 59 P.3d 120. We hold that Hapner had a right under MAR 7.3 to unilaterally withdraw his request for a trial de novo.
B. Time Limitation
¶ 10 Hudson argues nonetheless that even if MAR 7.3 authorizes unilateral withdrawal of a request for a trial de novo, the rule is ambiguous as to the procedures for doing so. She urges us to interpret the rule to include a time limit on withdrawals where a trial de novo has actually occurred. Hapner responds that his right to withdraw has no time limits.[4]
¶ 11 We are, like the Supreme Court in Ingram v. Dep't of Licensing, 162 Wash.2d 514, 526, 173 P.3d 259 (2007), wary of reading into rules restrictions that are not there or promulgating additional rules under the guise of interpreting them. (Citing Dep't of Licensing v. Cannon, 147 Wash.2d 41, 57-58, 50 P.3d 627 (2002)). We therefore will not add to or subtract from the clear language of a rule, even if we believe that the legislature intended something else but did not adequately express it, unless the addition or subtraction of language is imperatively required to make the rule rational. Ingram, 162 Wash.2d at 526, 173 P.3d 259 (quoting Cannon, 147 Wash.2d at 57, 50 P.3d 627).
¶ 12 Hudson cites general principles of fairness and efficiency for her proposal that a party may not withdraw his request for a trial de novo after "the" trial de novo has occurred. She argues that a contrary rule would allow a party to complete the trial, obtain a verdict, and then withdraw the request if he has not improved his position. This argument is flawed because it assumes that Hapner has received the benefit of his request for a trial de novo. He has not; although a trial has occurred, our reversal of the judgment returns the proceeding to the same posture as if it had not. See Weber v. Biddle, 72 Wash.2d 22, 28, 431 P.2d 705 (1967); cf. 15A Karl B. Tegland and Douglas J. Ende, Washington Practice: Civil Procedure § 67.18, at 514 (2007) (if trial court dismisses plaintiff's case but is reversed on appeal, case simply proceeds as if it were never dismissed). Hapner therefore did not *315 use the trial de novo to "gamble on the outcome" by obtaining a binding verdict and then withdrawing if it is less favorable than the original arbitration award. Contrast Creso v. Philips, 97 Wash.App. 829, 831, 987 P.2d 137 (1999) (failure to file proof of service is waived unless raised before the trial de novo commences), aff'd by Haywood v. Aranda, 143 Wash.2d 231, 233, 19 P.3d 406 (2001). There is no outcome for Hapner to compare with the arbitration award because the verdict was vacated.
¶ 13 Nor should the fact that Hapner pursued the appeal affect his right to withdraw under MAR 7.3. Had he not prevailed, he would indeed be bound by the jury's verdict from the first trial. But it is simply not Hapner's fault that the first trial was tainted by a reversible error outside his control. If the error in the first trial had been Hapner's fault, we would not have reversed. See City of Seattle v. Patu, 147 Wash.2d 717, 720, 58 P.3d 273 (2002) (doctrine of invited error prevents parties from benefiting from an error they caused at trial).
¶ 14 Finally, Hudson argues that Hapner should not be able to withdraw his request for a trial de novo because his decision to complete an entire trial and a lengthy appeal is contrary to the policy of MAR 7.3 to reduce delays in civil cases and waste of judicial resources. We agree that the law frowns on the use of procedural tactics to substantially delay the resolution of cases on the merits. See, e.g., CR 1 (superior court civil rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"); Rules of Professional Conduct (RPC) 3.1 and 3.2. But Hudson disregards that MAR 7.3 provides Hudson a remedy tailored precisely to the problem; it compensates Hudson for any costs arising from the delay[5]without exacerbating that delay by forcing the parties to go to trial. Hudson justifies her proposal that the parties continue to consume judicial resources in litigation by asserting that they are "far past the point where [preventing court congestion] is served." Br. of Resp't at 16. We disagree; no amount of past delay justifies future delay.
C. Waiver
¶ 15 Hudson argues that Hapner waived his right to withdraw his request for a trial de novo, relying on Haywood, 143 Wash.2d at 240-41, 19 P.3d 406.
¶ 16 A defendant waives an affirmative defense where (1) asserting the defense is inconsistent with the defendant's prior behavior or (2) the defendant has been dilatory in asserting the defense. Haywood, 143 Wash.2d at 239, 19 P.3d 406 (quoting Lybbert v. Grant County, 141 Wash.2d 29, 39, 1 P.3d 1124 (2000)). In Haywood, the defendants requested a trial de novo after arbitration, and the plaintiffs' affirmative "defense" was the defendants' failure to file proof of service of their request for a trial de novo under MAR 7.1(a). Haywood, 143 Wash.2d at 239, 19 P.3d 406. The plaintiffs knew of the defendants' delinquency from the beginning yet waited until after the jury verdict (which was less favorable to them than the original arbitration award) to object. Haywood, 143 Wash.2d at 240, 19 P.3d 406. The Supreme Court held that the plaintiffs' presentation of the case to the jury and acquiescence to the jury's deliberation was inconsistent with their later assertion that the trial court lacked jurisdiction over the case. Haywood, 143 Wash.2d at 240, 19 P.3d 406. The plaintiffs could not "simply `sit on' the [defense] . . . until the jury's verdict, and invoke such [defense] only if the verdict is less favorable than the arbitration award." Haywood, 143 *316 Wash.2d at 240, 19 P.3d 406 (quoting Creso, 97 Wash.App. at 831, 987 P.2d 137).
¶ 17 The situation here is distinguishable. First, Hapner's right to withdraw his request for a trial de novo is not a "defense" in the post-arbitration context where the defendant initiates the trial de novo proceeding. Rather, the right to withdraw the request under MAR 7.3 is a procedural right to take unilateral action. See Thomas-Kerr, 114 Wash.App. at 559 n. 16, 59 P.3d 120. While the plaintiffs' submission of the case to the jury in Haywood may be "inconsistent" with a belief that the court lacks jurisdiction, there is no such inconsistency here, where the applicable rules not only contemplate that the requesting party may change his mind but also encourage the party to do so. MAR 7.3; see Do, 127 Wash.App. at 187, 110 P.3d 840. And, to the extent that Hapner may have been "dilatory" in withdrawing the request, MAR 7.3 provides a remedy in the form of fees and costs. Hapner did not waive his right to withdraw.
D. Other Equitable Doctrines
¶ 18 Hudson also argues that the equitable doctrines of equitable estoppel, judicial estoppel, and laches preclude Hapner from withdrawing his request for a trial de novo.
¶ 19 Equitable remedies are extraordinary forms of relief, available only when an aggrieved party lacks an adequate remedy at law. Sorenson v. Pyeatt, 158 Wash.2d 523, 531, 146 P.3d 1172 (2006). Here, Hudson's remedy under MAR 7.3 is the original arbitration award, interest, and attorney fees and costs. She does not demonstrate that this remedy is inadequate, so we need not further consider her equitable claims.
¶ 20 In sum, we hold that Hapner was entitled to withdraw his request for a trial de novo under MAR 7.3. We therefore reverse the trial court's order striking Hapner's withdrawal of his trial de novo request. And because a trial court is bound to enter judgment on an arbitration award in the absence of a request for a trial de novo, RCW 7.06.050(2), we remand for entry of judgment on Hapner's notice of presentment together with Hudson's fees and costs under MAR 7.3.
E. Attorney Fees
¶ 21 In her brief and citing to RAP 18. 1, Hudson requests attorney fees under MAR 7.3. She also requests sanctions under RAP 18.9(a), arguing that Hapner's appeal is frivolous and "an affront to the justice system." Br. of Resp't at 27. Because Hudson is not the prevailing in this appeal, we deny both requests.
¶ 22 We reverse and remand for entry of judgment on Hapner's notice of presentment after calculating MAR 7.3 fees and costs.
I concur: BRIDGEWATER, J.
VAN DEREN, C.J. (dissenting).
¶ 23 I respectfully dissent. The majority holds that Hapner had a right to unilaterally withdraw his request for a trial de novo at any time and suggests that Hudson's only recourse to avoid this result was to move for trial de novo within 20 days of the arbitrator's decision. Majority at 313-314.
¶ 24 Once again, a rule that is supposed to reduce court congestion of civil cases, Malted Mousse, Inc. v. Steinmetz, 150 Wash.2d 518, 526, 79 P.3d 1154 (2003), and intended to encourage parties to accept an arbitrator's decision by penalizing unsuccessful appeals, Walji v. Candyco, Inc., 57 Wash.App. 284, 290, 787 P.2d 946 (1990), has resulted in protracted litigation. See e.g., Wiley v. Rehak, 143 Wash.2d 339, 342-43, 20 P.3d 404 (2001); Haywood v. Aranda, 143 Wash.2d 231, 234-35, 19 P.3d 406 (2001); Nevers v. Fireside, Inc., 133 Wash.2d 804, 807-09, 947 P.2d 721 (1997); Christie-Lambert Van & Storage Co. v. McLeod, 39 Wash.App. 298, 301-02, 309, 693 P.2d 161 (1984).
I. Legislative Intent Is Not Achieved
¶ 25 The majority opines that its result furthers the legislative goal of decreasing court congestion and delays in civil litigation. Majority at 313-314, 314-315. I respectfully disagree. "When interpreting statutory language, our goal is to carry out" the legislature's intent. Simpson Inv. Co. v. Dep't of Revenue, 141 Wash.2d 139, 148, 3 P.3d 741 *317 (2000). "In ascertaining this intent, the language at issue must be evaluated in the context of the entire statute." Simpson, 141 Wash.2d at 149, 3 P.3d 741. We derive the legislative intent from the statute's plain language and ordinary meaning; however, we must "avoid unlikely, absurd, or strained results." Berrocal v. Fernandez, 155 Wash.2d 585, 590, 121 P.3d 82 (2005) (internal quotation marks omitted) (quoting Burton v. Lehman, 153 Wash.2d 416, 423, 103 P.3d 1230 (2005)).
¶ 26 The primary goal of the legislation authorizing mandatory arbitration in certain civil cases is to reduce court congestion, to reduce costs, and to allow civil claims to be heard without delay. See Malted Mousse, 150 Wash.2d at 526, 79 P.3d 1154; Christie-Lambert Van, 39 Wash.App. at 302, 693 P.2d 161; 1 Senate Journal, 46th Leg., Reg. Sess., at 1016-17 (Wash.1979).
The legislative history of the statute explains that the "[e]xperience of other states indicates that [mandatory arbitration] is an effective method of reducing court congestion and also providing a fair but streamlined resolution of disputes involving small sums. Speed is gained both in setting a hearing date and actual trial time."
Perkins Coie v. Williams, 84 Wash.App. 733, 737, 929 P.2d 1215 (1997) (alteration in original) (quoting S.B. Rep. on Substitute H.B. 425, 46th Leg., Reg. Sess. (Wash.1979)). These goals have not been met in this case because the majority's resolution allows Hapner to withdraw his request for a trial de novo nine years after the case was filed in October 1999, eight years after asking for a trial de novo in December 2000, and five years after receiving one in April 2003.
¶ 27 "`A supplemental goal of the mandatory arbitration statute is to discourage meritless appeals.'" Wiley v. Rehak, 143 Wash.2d 339, 348, 344, 20 P.3d 404 (2001) (quoting Perkins Coie, 84 Wash.App. at 737-38, 929 P.2d 1215). RCW 7.06.060 and MAR 7.3 reflect this goal because they permit the trial court to assess attorney fees against a party who fails to improve her position at a trial de novo. Wiley, 143 Wash.2d at 348, 20 P.3d 404. The purpose of these rules, which permit the trial court to award fees and costs when the opposing party either (1) requests a trial de novo and then does not advance his or her position in trial or (2) withdraws his or her request for a trial de novo, "is to deter such requests made solely to delay enforcement of the award." Christie-Lambert Van, 39 Wash.App. at 302, 693 P.2d 161 (citing Judicial Council Comment, MAR 7.3).
¶ 28 The majority and Hapner rely on Thomas-Kerr v. Brown, 114 Wash.App. 554, 559 n. 16, 59 P.3d 120 (2002), to allow Hapner the right under MAR 7.3 to unilaterally withdraw his request for a trial de novo after the trial court heard the case de novo and we remanded for a second trial. Majority at 313-314. But Thomas-Kerr is distinguishable. In Thomas-Kerr, Alva Thomas-Kerr and Fredrick Brown were involved in an automobile collision and following mandatory arbitration, Brown requested a trial de novo. Before the trial occurred, Brown withdrew his request for a trial de novo. Thomas-Kerr, 114 Wash.App. at 556-57, 59 P.3d 120. Here, however, Hapner did not withdraw his request until after the trial de novo, after we remanded the case for a second trial, and after additional discovery following remand.[6]See Hudson v. Hapner, noted at 126 Wash. App. 1057, 2005 WL 834433, at *5, review denied, 156 Wash.2d 1008, 132 P.3d 146 (2006).
¶ 29 The majority reasons that its decision is consistent with the legislature's goal of reducing court congestion through mandatory arbitration. Majority at 313-314. But the legislature's goal of reducing court congestion through less costly arbitration clearly has not been met in a case that has been in litigation for eight years. Moreover, permitting Hapner to now withdraw his request for a trial de novo allows him to engage in two meritless appeals, the first when he requested a trial de novo and the second when he *318 appealed the result of that trial de novo to this court. This clearly contravenes the legislature's intent and is an absurd result that we should discourage. See Tingey v. Haisch, 159 Wash.2d 652, 669, 152 P.3d 1020 (2007). Furthermore, his request for a trial de novo has successfully delayed enforcement of the arbitration award for eight years.
¶ 30 The majority's ruling encourages continued litigation by both parties merely as a defensive tactic.[7] A litigant who runs the risk of an appealing party freely walking away from a request for a trial de novo after engaging in additional trial litigation for eight years is faced with a Hobson's choice appeal just to have an appeal in place many years later, or gamble that the appealing party will be equitably estopped from abandoning a case after causing the other party to go through a full trial, an appeal, and discovery before and after the appeal. Malpractice worries can force both parties to appeal arbitration awards, thereby eviscerating the intent and benefit of the arbitration rule. When a party cannot rely on enforcement of the opposing party's decision to either accept the arbitrator's decision or live with its own decision to ask for a trial de novo and litigate over the course of eight years, MAR 7.3 becomes a way station to more litigation, prolonging finality, and providing a means of significant delay solely controlled by one party.
II. Civil Rules Should Apply
¶ 31 When a party requests a trial de novo, the case is transferred to the superior court's civil docket and, necessarily, the superior court's civil and local rules then apply. See, e.g., MAR 7.1(b); MAR 7.2(b); MAR 8.2; Wilson v. Horsley, 137 Wash.2d 500, 506, 974 P.2d 316 (1999) ("The question of what issues may be added to the trial de novo is governed by the Civil Rules."); Sorenson v. Dahlen, 136 Wash.App. 844, 851-52, 149 P.3d 394 (2006), amended on recons., 136 Wash. App. at 859, 149 P.3d 394 (2007); Stevens v. Gordon, 118 Wash.App. 43, 51, 74 P.3d 653 (2003). Moreover, a trial de novo is an appeal. See Thomas-Kerr, 114 Wash.App. at 558, 59 P.3d 120; 1 Senate Journal, 46th Leg., Reg. Sess., at 1017 (Wash.1979). Therefore, I would apply the civil rules to this case.
¶ 32 But the majority reasons that if the legislature or the Washington Supreme Court intended that a party's right to withdraw its request for a trial de novo exists only before trial, or only before it finishes presenting its evidence at trial, they could have used language similar to that in CR 41(a)[8] or RAP 18.2.[9] Majority at 313. Rather *319 than allowing the withdrawal of a request for trial de novo following trial and appeal, the better approach is that established rules of civil procedure govern the trial de novo process. Furthermore, "[i]n the absence of an explicit statement in the statute or the legislative history" about the purposes of a statute or a rule, we may consider other statutes concerning the same subject matter in our statutory construction of the statute or rule. Christie-Lambert Van, 39 Wash.App. at 302, 693 P.2d 161.
¶ 33 Thus, I would hold that the established civil rules apply to Hapner's late request to withdraw his request for a trial de novo. No other civil rule allows a party unilaterally to withdraw his or her case after the trial court has heard, and ruled on, the case. See CR 41(a); RAP 18.2. Thus, a logical conclusion is that the legislature and the Supreme Court intended that the civil rules concerning withdrawal of claims apply to a party's withdrawal of the trial de novo request. The civil rules, before a case is transferred to mandatory arbitration, generally do not apply. Wiley, 143 Wash.2d at 346, 20 P.3d 404. Although we have recognized that the claims may not be amended under the civil rules for a trial de novo from arbitration, Wiley, 101 Wash.App. at 204, 2 P.3d 497, when a case is transferred back to the trial court on a perfected trial de novo, the trial court necessarily manages the case under the civil rules. Thus, the trial court had the authority to deny dismissal of Hapner's untimely request for a trial de novo.
III. Compensation for Delay Is Not Guaranteed
¶ 34 The majority also assumes that Hapner must compensate Hudson for any costs arising from the eight-year delay due to Hapner's desire to have a first trial, an appeal asking for a second trial, and to engage in discovery before trial and after a successful appeal. Majority at 315, 316. But because fees and costs under MAR 7.3 are discretionary, there is no guarantee that Hudson can ever be made whole. MAR 7.3. The only fair and reasonable remedy at this stage is to require that the parties remain in the forum Hapner chose in 2000.
IV. Waiver Should Apply
¶ 35 The majority also assumes that a full trial, an appeal asking for a second trial, and additional discovery following appeal are distinguishable from the plaintiffs' conduct in Haywood, 143 Wash.2d 231, 19 P.3d 406. Majority at 315-316. In Haywood, the defendants requested a trial de novo following arbitration, but failed to properly file proof of service with the trial court. After the jury rendered a verdict for substantially less than the plaintiffs were awarded by the arbitrator, the plaintiffs moved to vacate the jury verdict because the defendants failed to properly file proof of service. Haywood, 143 Wash.2d at 233-34, 19 P.3d 406. The trial court, this court, and the Washington State Supreme Court held that the plaintiffs waived any objection to the defendants' failure to properly file proof of service "by not registering the objection before the trial de novo commenced." Haywood, 143 Wash.2d at 235, 19 P.3d 406.
¶ 36 The majority opines that Hapner's right to withdraw his request for a trial de novo is distinguishable from Haywood because it is not a defense, but rather a procedural right. Majority at 315-316. But the doctrine of waiver applies to procedural rules as well. See Haywood, 143 Wash.2d at 239-240, 19 P.3d 406. Moreover, we have consistently upheld that long-standing "principle that procedural rules should be interpreted to eliminate procedural traps and to allow cases to be decided on their merits." Haywood, 143 Wash.2d at 238, 19 P.3d 406. I respectfully disagree with the majority and would find that, similar to Haywood, Hapner's request to withdraw his trial de novo request now is inconsistent with his former position requesting, participating in, and appealing a trial de novo. See Majority at 315-316. I further disagree with the majority and do not believe that MAR 7.3 encourages a party to change his or her mind about requesting a trial de novo after trial has occurred. See Majority at 315-316. Hapner was dilatory in seeking to withdraw his request *320 for a trial de novo six years after his request and on the heels of a favorable appellate ruling vacating the jury's verdict awarding Hudson substantially larger damages than had the arbitrator. And MAR 7.3 does not guarantee a remedy for Hapner's dilatory action in the form of fees and costs. See Majority at 315-316. Therefore, I would hold that Hapner waived his right to withdraw his request for a trial de novo here. See Haywood, 143 Wash.2d at 239, 19 P.3d 406.
V. Alternatively, Judicial Estoppel Should Apply
¶ 37 Notwithstanding that the majority's holding creates a result incompatible with legislative intent, thereby dictating that the trial court's ruling be affirmed, I would alternatively invoke the doctrine of judicial estoppel, an equitable doctrine that we may invoke at our discretion, to prevent Hapner from "`asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" Arkison v. Ethan Allen, Inc., 160 Wash.2d 535, 538, 160 P.3d 13 (2007) (quoting Bartley-Williams v. Kendall, 134 Wash.App. 95, 98, 138 P.3d 1103 (2006)); see also New Hampshire v. Maine, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001); Skinner v. Holgate, 141 Wash.App. 840, 847, 173 P.3d 300 (2007).
¶ 38 "The doctrine serves three purposes: (1) to preserve respect for judicial proceedings; (2) to bar as evidence statements by a party that would be contrary to sworn testimony the party gave in prior judicial proceedings; and (3) to avoid inconsistency, duplicity, and waste of time." Skinner, 141 Wash.App. at 847, 173 P.3d 300. The judicial estoppel doctrine "protect[s] the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." Skinner, 141 Wash.App. at 849, 173 P.3d 300.
[Although not exclusive, t]hree core factors guide a trial court's determination of whether to apply the judicial estoppel doctrine: (1) whether "a party's later position" is "clearly inconsistent with its earlier position"; (2) whether "judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."
Arkison, 160 Wash.2d at 538-39, 160 P.3d 13 (internal quotation marks omitted) (quoting New Hampshire, 532 U.S. at 750-51, 121 S.Ct. 1808); see also Skinner, 141 Wash.App. at 848, 173 P.3d 300.
¶ 39 Here, Hapner's position is clearly inconsistent with the position he maintained from 2000 until 2007. Hapner wanted a trial de novo after the arbitrator's decision. Now, after that trial de novo and his subsequent appeal, Hapner wants to withdraw his request for a trial de novo and enforce the arbitrator's decision. Hapner derives an unfair advantage and imposes an unfair detriment on Hudson if he is not estopped from doing so. Because Hapner objected to entry of a judgment in 2000 on the arbitration award, interest has not accrued for lack of such a judgment, and Hudson's arbitration award is significantly diminished by the passage of time. It has now been eight years since the arbitration award. Loss of the use or interest on that money prevents Hudson from being made whole by now entering a judgment on the original amount. The lack of a full legal remedy by reversion to the 2000 award now calls for equitable relief.
¶ 40 Here, Hapner, the non-prevailing party, received the trial de novo he requested, appealed for and was granted a second trial, engaged in extensive discovery before the first trial and after his appeal, and used the eight-year post-arbitration period to eventually decide he did not want a trial de novo after all. The unfair advantage to Hapner and unfair detriment to Hudson, who can never be made whole, are obvious. Hudson lost the use of the money awarded in 2000, lost all accruable legal interest, incurred legal and expert fees and costs with no guarantee of reimbursement, and has been forced to endure discovery, trial, and two appeals. It is hard to imagine a case that more dictates judicial estoppel for abuse of the legal system, particularly under a rule designed to deter exactly Hapner's conduct.
*321 ¶ 41 For all of the above reasons, I dissent and would return the case to the trial court for the second trial that we previously ordered.
NOTES
[1] For convenience, we refer to all defendants collectively as "Hapner."
[2] The applicable language in these statutes and MARs is virtually identical, so for convenience we refer only to the MARs.
[3] Both RAP 18.2 and RALJ 10.2(c) provide that upon the appellant's motion, the court may dismiss the appeal "in its discretion."
[4] Hapner relies on Walji v. Candyco, Inc., 57 Wash.App. 284, 787 P.2d 946. Walji addressed a different issue: whether a plaintiff who had lost at arbitration, requested a trial de novo, then moved for a voluntary nonsuit under CR 41(a) could avoid paying fees and costs under MAR 7.3 because it had not technically "withdrawn" it. Walji, 57 Wash.App. at 290, 787 P.2d 946. The court found "no meaningful difference between withdrawing an appeal and taking a voluntary nonsuit," and held that depending on the circumstances, fees and costs could be appropriate because "[v]oluntary nonsuits may come shortly after service before discovery even starts, or may come after days of trial before a jury." Walji, 57 Wash.App. at 290, 787 P.2d 946; see generally CR 41(a)(1)(B) (plaintiff entitled to dismissal without prejudice "at any time before plaintiff rests at the conclusion of his opening case"). However, Thomas-Kerr, 114 Wash.App. at 563, 59 P.3d 120, has since held that MAR 6.3 prohibits a plaintiff from nonsuiting a case after an arbitrator's decision, so Walji is not helpful.
[5] The dissent suggests that fees and costs under MAR 7.3 are not an adequate remedy because they are discretionary, not "guarantee[d]." Dissent at 319. This argument is not persuasive for two reasons. First, the fact that MAR 7.3 fees are discretionary does not mean that a trial court's decision to award them may be unprincipled or would not be reviewable by this court. See Oltman v. Holland Am. Line USA, Inc., 163 Wash.2d 236, 243, 178 P.3d 981 (2008) (discretionary rulings by trial court generally reviewed under abuse of discretion standard). Second, fees, costs, and interest are guaranteed in this case because Hapner conceded his responsibility to pay them in his notice of presentment. So, contrary to the dissent's contentions, Dissent at 319, 320, Hudson will receive interest on the original arbitration award and compensation for all the fees and costs she expended in defending this trial de novo appeal.
[6] The majority notes that our remand for a new trial did not result from Hapner's trial errors. Majority at 314-315. But we reversed and remanded because of the trial court's error, not because of error by either party. Hudson v. Hapner, noted at 126 Wash.App. 1057, 2005 WL 834433, at *3, review denied, 156 Wash.2d 1008, 132 P.3d 146 (2006).
[7] The majority reasons that Hapner did not use the trial de novo to gamble on the outcome because we vacated the jury's verdict and granted the relief Hapner requested on appeal. Majority at 314-315. But Hapner has been able to delay paying Hudson's damages and in the process has forced her to incur more expense while he conducted extended discovery. In addition, the majority notes that if Hapner had not prevailed on appeal, he would have been bound by the jury's verdict from the first trial. Majority at 314-315. The majority's reasoning in fact encourages parties to appeal on the "chance" or "gamble" that we or another higher court will overturn the result of their trial de novo.
[8] CR 41(a) provides:

(1) Mandatory. Subject to the provisions of rules 23(e) and 23.1, any action shall be dismissed by the court:
(A) By Stipulation. When all parties who have appeared so stipulate in writing; or
(B) By Plaintiff Before Resting. Upon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case.
(2) Permissive. After plaintiff rests after his opening case, plaintiff may move for a voluntary dismissal without prejudice upon good cause shown and upon such terms and conditions as the court deems proper.
But compare Walji, 57 Wash.App. at 287, 787 P.2d 946 (noting a party has "a right to a voluntary nonsuit without terms until it rested its case in the trial de novo"), with Thomas-Kerr, 114 Wash.App. at 562, 59 P.3d 120 (noting that while a case is under arbitrator's review, the plaintiff may withdraw under CR 41, but after the arbitrator's decision, the plaintiff must seek permission to withdraw).
[9] RAP 18.2 provides:

The appellate court on motion may, in its discretion, dismiss review of a case on stipulation of all parties and, in criminal cases, the written consent of the defendant, if the motion is made before oral argument on the merits. The appellate court may, in its discretion, dismiss review of a case on the motion of a party who has filed a notice of appeal, a notice for discretionary review, or a motion for discretionary review by the Supreme Court. Costs will be awarded in a case dismissed on a motion for voluntary withdrawal of review only if the appellate court so directs at the time the motion is granted.