239 P.3d 579 (2010)
Lea HUDSON, individually, Petitioner,
v.
Clifford and "Jane Doe" HAPNER, individually, and as a marital community composed thereof; and Matthew Norton, a Washington corporation, Respondents.
No. 82409-6.
Supreme Court of Washington, En Banc.
Argued January 26, 2010.
Decided September 23, 2010.
*580 Kari Ingrid Lester, Ben F. Barcus & Associates, P.L.L.C., Tacoma, WA, for Petitioner.
Elizabeth Ann Jensen, Attorney at Law, Fircrest, WA, Marilee C. Erickson, Pamela A. Okano, Reed McClure, Seattle, WA, for Respondents.
MADSEN, C.J.
¶ 1 This case began with an automobile accident. The case was referred to mandatory arbitration, and the plaintiff, Lea Hudson, won a monetary award. Respondents (Hapner) requested a trial de novo under the Superior Court Mandatory Arbitration Rules (MAR). Hudson improved her position at trial, receiving a substantially greater award. Hapner successfully appealed, obtaining reversal and instructions for a new trial. Despite appellate success, Hapner moved in the trial court to withdraw his request for trial *581 de novo, end the litigation, and pay the original arbitration award. The trial court denied the motion but the Court of Appeals reversed, holding that the mandatory arbitration rules provide a unilateral right to withdraw a request for trial de novo. We agree that the rules do provide for unilateral withdrawal, but hold that this right must be exercised prior to the start of trial proceedings. Accordingly, we reverse the Court of Appeals and remand for a new trial.

FACTS
¶ 2 On April 6, 1998, Hapner rear-ended Hudson in an automobile accident. Hudson filed a lawsuit and requested arbitration under the mandatory arbitration rules. On November 17, 2000, arbitration resulted in an award of $14,537.97 for Hudson.[1] Hapner requested a trial de novo. At the conclusion of trial the jury awarded Hudson a significantly higher amount than the arbitration award: $292,298.[2] Pursuant to MAR 7.3, the court also granted attorney fees, $38,956.25, costs, $1,624.80, and later added $4,935 in attorney fees in a supplemental judgment.
¶ 3 Hapner appealed, alleging various evidentiary errors related to admissibility of expert witness testimony, portions of Hudson's testimony, and use of a model spine at trial.
¶ 4 In a separate section of her appellate brief, Hudson requested attorney fees under MAR 7.3. She also requested fees and costs on appeal in the event she prevailed.
¶ 5 The Court of Appeals ruled that evidence had been improperly excluded and reversed, remanding the matter for a new trial. Hudson v. Hapner, noted at 126 Wash.App. 1057, 2005 WL 834433, at *3 (Hudson I). The court also denied Hudson's attorney fees on appeal, holding that "her claim of reasonable attorney fees at trial must abide the outcome" of the second trial. Id. at *4.
¶ 6 After the Court of Appeals issued its decision, Hapner filed a cost bill requesting $200 in statutory attorney fees and $3,473.25 in costs incurred on appeal. Appellants' Cost Bill on Appeal at 1-2 (Apr. 21, 2005) (citing RAP 14.3).[3] Hapner argued he was "the prevailing party on appeal" and that he was entitled to statutory attorney fees and costs pursuant to RAP 14.3.
¶ 7 Hudson objected to the cost bill, arguing (i) "both parties must bear their own costs," because Hapner had only prevailed in part, (ii) awarding costs to Hapner violated the purposes of the mandatory arbitration rules, which contain its own attorney fees provisions, and (iii) in the alternative, an award of attorney fees and costs to Hapner under RAP 14.2 should at least "abide the final determination of this action." Resp't's Objection to Appellants' Cost Bill at 1, 3, 4, 6 (May 2, 2005).
¶ 8 The Court of Appeals awarded costs and attorney fees to Hapner as the substantially prevailing party.
¶ 9 Hudson's subsequent motion for reconsideration (reiterating her request for attorney fees) and her petition for review in this court were both denied.
¶ 10 Following remand, Hapner filed a motion to compel supplemental discovery. Hudson complied, providing additional information about her medical records and billing. Thereafter, Hapner moved to withdraw his request for trial de novo and submitted a draft judgment in which he offered to pay the original arbitration award plus interest, as well as Hudson's attorney fees and costs incurred in proceedings before the superior court.[4] Hudson objected and moved to *582 strike. The trial court denied Hapner's motion, and Hapner appealed.
¶ 11 In the second appeal, Hudson requested attorney fees and costs in a separate section of her brief.[5] Specifically, she requested attorney fees and costs "[u]pon prevailing in this appeal and pursuant to MAR 7.3 and RAP 18.1(b)." Resp't's Br. at 25-26.
¶ 12 The Court of Appeals reversed the trial court, holding that the mandatory arbitration rules provide a unilateral right to withdraw at any time. The court also denied Hudson's request for attorney fees and costs incurred during this second appeal, since Hudson was not the prevailing party on appeal. Hudson v. Hapner, 146 Wash.App. 280, 187 P.3d 311 (2008) (Hudson II).[6] Hudson then filed a motion for reconsideration, urging the court to reconsider both of its decisions (Hudson I and II) pursuant to RAP 2.5(c)(2) and grant her request for attorney fees incurred during both appeals. This motion was denied.
¶ 13 Hudson petitioned this court for review.

ANALYSIS
¶ 14 On December 7, 2000, Hapner requested a trial de novo. After completing one trial, one appeal, and almost six years of litigation, Hapner sought to unilaterally withdraw his request for a trial de novo. Hudson argues there is no unilateral right to withdraw or, if it exists, it cannot be asserted at this late stage in proceedings. We conclude that Hapner had a unilateral right to withdraw his request. However, we agree with Hudson that his decision came too late.
¶ 15 RCW 7.06.060(1) and the mandatory arbitration rules do not explicitly create a right to withdraw a request for trial de novo. However, MAR 7.3, the attorney fees provision, mentions voluntary withdrawal of such a request.
The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo. The court may assess cost and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo.

MAR 7.3 (emphasis added).
¶ 16 RCW 7.06.060(1) provides an almost identical statement, but adds that fees and costs may be assessed following voluntary withdrawal "if the withdrawal is not requested in conjunction with the acceptance of an offer of compromise."
¶ 17 We interpret the mandatory arbitration rules as if they were drafted by the legislature. Wiley v. Rehak, 143 Wash.2d 339, 343, 20 P.3d 404 (2001). Because we avoid interpreting statutes in ways that render provisions meaningless, Svendsen v. Stock, 143 Wash.2d 546, 555, 23 P.3d 455 (2001), the same principle applies here. The language of MAR 7.3 and RCW 7.06.060(1) contemplates that a party may withdraw a request for trial de novo without the consent of the other party. If this occurs, the court has discretion to assess attorney fees and costs. Hudson's argument, that there is no unilateral right to withdraw, would render the attorney fee provisions meaningless.
¶ 18 The Court of Appeals reached the same conclusion in Thomas-Kerr v. Brown, 114 Wash.App. 554, 559 n. 16, 59 P.3d 120 (2002). In that case the defendant withdrew his request for a trial de novo. The plaintiff argued the case should have proceeded *583 to trial. Here, the Court of Appeals reasoned that MAR 7.3 implies that a party has a right to unilaterally withdraw a request for trial de novo and, since the plaintiff had not requested a trial de novo, she was not entitled to a jury trial.
¶ 19 Hudson argues that the Court of Appeals was wrong in Thomas-Kerr because once a case is no longer in arbitration, the civil rules apply, not the mandatory arbitration rules. As authority, Hudson cites MAR 1.3(b)(1), which states that until a case is assigned to the arbitrator, the rules of civil procedure apply. But this provision does not preclude the application of MAR 7.3 after an arbitration is concluded.
¶ 20 The parties agree that the primary goal of mandatory arbitration is to reduce congestion in the courts and delays in hearing cases. Nevers v. Fireside, Inc., 133 Wash.2d 804, 815, 947 P.2d 721 (1997); Haywood v. Aranda, 143 Wash.2d 231, 238, 19 P.3d 406 (2001). We believe that interpreting MAR 7.3 and RCW 7.06.060(1) to permit unilateral withdrawal of a request for trial de novo furthers the intent underlying the rules and the statute. Regardless of the outcome in a particular case, as a general proposition, permitting withdrawals of requests for trial de novo serves the purposes of arbitration because such withdrawals will generally eliminate any further court congestion and delay in many, if not the majority, of these cases. The aim of MAR 7.3 is to "influence [a party's] choices in the hope of reducing court congestion." Du Do v. Farmer, 127 Wash. App. 180, 187, 110 P.3d 840 (2005). Our decision lends itself to this purpose, regardless of its impact in this particular case.
¶ 21 Accordingly, we hold the mandatory arbitration rules create an implied right to unilateral withdrawal.
¶ 22 Anticipating this holding, Hudson argues that even if the mandatory arbitration rules and chapter 7.06 RCW permit unilateral withdrawal, Hapner's decision comes too late. We agree.
¶ 23 While we hold there is an implied right to unilaterally withdraw a request for trial de novo based on the language in the attorney fees provisions, neither the mandatory arbitration rules nor the statute implies a time limit for exercising the right. Therefore, we look to the language and purpose of the rules and chapter 7.06 RCW to determine the scope of the right.
¶ 24 First, the language of MAR 7.3 indicates that the decision to forgo a trial de novo after having exercised the right to pursue it must be made prior to commencement of the trial. The rule refers to withdrawal of "a request for a trial de novo." MAR 7.3. It does not refer to withdrawal from the trial de novo itself. Once a trial de novo is underway, it is no longer a matter of withdrawing a "request" alone.
¶ 25 Next, Hudson argues that it is inconsistent with the goal of mandatory arbitration for a party to be able to withdraw a request for trial de novo after the case has been tried before a jury. She argues that this only encourages a party who is unsuccessful in arbitration to seek a trial de novo. We agree.
¶ 26 Without placing some limit on when a party can withdraw a request for trial de novo, one party is free to drag the case on by conducting discovery to see if his or her position improves or not. If it does not, the party can withdraw the request for a trial de novo, knowing there is only a risk of having to pay additional attorney fees and costs (which are discretionary, not mandatory) and no risk of paying any further damages. Allowing unilateral withdrawal during trial would artificially alter the balance of power between the parties.
¶ 27 This result would also be contrary to the specific purpose of the discretionary attorney fee and costs provision in MAR 7.3. When this rule was promulgated, its purpose was stated as follows: "The provision in Rule 7.3 concerning costs and attorney's fees upon withdrawal of a request for a trial de novo discourages a party from requesting a trial de novo solely for the purpose of delaying enforcement of the [arbitration] award." MAR 7.3, Judicial Council Comment.[7] Regardless *584 of whether delay is specifically intended, delay is certainly the effect when, as here, the arbitration award remains unpaid and the party against whom the award was entered is permitted to pursue a trial de novo until he decides for strategic or tactical reasons that withdrawal from the trial de novo is the more advantageous course. Moreover, this result is contrary to the purpose of avoiding congestion and delay that we recognized in Nevers because it creates an incentive, rather than a penalty, to request trial de novo after a loss at arbitration proceedings. We recognize that requiring Mr. Hapner to conclude the trial de novo that he requested will add to delay and congestion in this specific case, but overall our decision will serve as a disincentive to requests for a trial de novo for the purpose of delaywhether delay for the sake of delay or delay with the purpose of assessing the strength of the other party's case and making a final decision about trial at some future time based upon what is learned. Such misuse of the mandatory arbitration rules is to be discouraged. By permitting unilateral withdrawal prior to the start of trial de novo only, our interpretation of the mandatory arbitration rules and the statute removes the incentive to gamble on trial de novo and provides no tactical advantage for requesting it. It comports with the language and the purpose of MAR 7.3's discretionary attorney fees provision regarding withdrawal of a request for a trial de novo. Accordingly, we hold the unilateral right to withdrawal must be exercised prior to the start of trial de novo.

Attorney Fees and Costs
¶ 28 Hudson claims attorney fees and costs for all proceedings from the date of Hapner's request for trial de novo through the proceedings pending before this court, pursuant to MAR 7.3. Hapner disputes Hudson's entitlement to fees and costs, except fees and costs incurred in the superior court, which Hapner offered to pay in his notice of presentment.
¶ 29 Hapner first argues Hudson cannot claim fees and costs incurred in proceedings before the Court of Appeals on the first and second appeal, because she did not comply with the pleading requirements of RAP 18.1, which provides:
(a) Generally. If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court.
(b) Argument in Brief. The party must devote a section of its opening brief to the request for the fees or expenses. Requests made at the Court of Appeals will be considered as continuing requests at the Supreme Court. The request should not be made in the cost bill. In a motion on the merits pursuant to rule 18.14, the request and supporting argument must be included in the motion or response if the requesting party has not yet filed a brief.
(Boldface omitted.)
¶ 30 This court has held RAP 18.1(b) requires "[a]rgument and citation to authority" as necessary to inform the court of grounds for an award, not merely "a bald request for attorney fees." Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 710 n. 4, 952 P.2d 590 (1998).
¶ 31 Hudson requested attorney fees in a separate section of her brief in both appeals. In each case, she cited MAR 7.3 and relevant case law for authority. Therefore, she met the requirements of RAP 18.1(b).[8]
*585 ¶ 32 Hapner argues these requests were insufficient because Hudson expressed her requests as contingencies, i.e., she requested fees and costs only in the event she prevailed in the Court of Appeals, which she did not. Hudson's requests for attorney fees in both appeals were contingent. However, RAP 18.1 does not prohibit this court from awarding attorney fees simply because the request is expressed as a contingency. Only a separate section and citation to authority are required. Hudson's requests, despite some imprecise language, are sufficient to preserve her claim to attorney fees for both appeals, as well as before this court.
¶ 33 Although we conclude that Hudson preserved her right to claim attorney fees and costs under the mandatory arbitration rules, whether she is entitled to those costs and fees must abide the outcome of retrial. As noted, MAR 7.3 provides:
The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo. The court may assess costs and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo.
¶ 34 Until the case is concluded there is no way to know whether Hapner will fail to improve his position.[9]
¶ 35 In addition to requesting attorney fees and costs for all proceedings after Hapner's trial de novo request, Hudson asks this court to reevaluate the Court of Appeals' decision in Hudson I. Hudson contends the "`prevailing party'" is one who prevails "`at the conclusion of the entire case.'" Resp't's Corrected Pet. for Review at 23 (quoting Tribble v. Allstate Prop. & Cas. Ins. Co., 134 Wash.App. 163, 174-75, 139 P.3d 373 (2006)). Hudson reasons that Hapner has not yet improved his position at trial de novo, and thus has not "prevailed" so far. She argues Hapner should not have been awarded fees and costs during the first appeal and that this result, as well as the denial of her fees and costs in both Hudson I and II conflicts with Tribble.
¶ 36 As far as Hudson's arguments related to costs and fees under MAR 7.3, Hudson is correct. However, Hudson confuses a prevailing party award under RAP 14.2 with attorney fees to be awarded at the conclusion of trial de novo under MAR 7.3. RAP 14.2 provides:
A commissioner or clerk of the appellate court will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review. If there is no substantially prevailing party on review, the commissioner or clerk will not award costs to any party. An award of costs will specify the party who must pay the award.
¶ 37 Attorney fees under RAP 14.2 are statutory attorney fees and costs are limited to costs on review. A prevailing party is determined by the outcome of the appeal. In contrast, attorney fees and costs under MAR 7.3 depend on the outcome of a trial de novo and include all "costs and reasonable attorney fees incurred after a request for a trial de novo is filed." MAR 7.3.
¶ 38 In Hudson I, Hapner substantially prevailed because he succeeded in achieving the relief he requested: reversal of the trial de novo result and remand for retrial. This result does not depend on whether Hapner improves his position in the trial de novo. Thus, the Court of Appeals correctly awarded him costs based on RAP 14.2. Of course, if Hapner fails to improve his arbitration position, then the trial court must award Hudson attorney fees and costs from both appeals under the mandatory provisions of MAR 7.3.

CONCLUSION
¶ 39 We hold that MAR 7.3 and RCW 7.06.060(1) imply a unilateral right to withdraw *586 a request for trial de novo, but withdrawal must be exercised prior to the start of trial. The trial de novo in this case has already occurred and been reversed on appeal. An appellate decision reversing and remanding for a new trial does not restart the clock. Instead, the situation is analogous to a trial that has begun but has not been completed. Hapner may not unilaterally withdraw at this time, and must undergo a second trial de novo unless the parties reach a settlement.
WE CONCUR: CHARLES W. JOHNSON, GERRY L. ALEXANDER, TOM CHAMBERS, SUSAN OWENS, and DEBRA L. STEPHENS, Justices.
SANDERS, J. (dissenting).
¶ 40 RCW 7.06.060(1) and MAR 7.3 recognize a party can withdraw its request for a trial de novo, and nothing in chapter 7.06 RCW or MAR 7 places any limitation on when a party can do sonor is such a limitation necessary for the provisions to function. This court should hold, as the Court of Appeals held, that Clifford Hapner is entitled to withdraw his trial request. See Hudson v. Hapner, 146 Wash.App. 280, 290, 187 P.3d 311 (2008).
¶ 41 Instead, the majority creates a limitation on when a party can withdraw its trial request, precluding a party from doing so once the trial has begun. But nothing in chapter 7.06 RCW or MAR 7 alludes to a party losing its right to withdraw its request for a trial. The majority attempts to justify its judicially fabricated cutoff with a balance of policy interestssomething the legislature already did when drafting chapter 7.06 RCW. Yet even ignoring the inappropriateness of the majority's replacing the legislature's policy balance with its own, the justifications cited by the majority do not actually support the majority's conclusion. I dissent.
¶ 42 It is difficult to address the majority's reasoning because, much like Frankenstein's monster, the majority opinion is a sewn-together collection of partial arguments, each pilfered from a different cadaver and none lending any real support to its conclusion.
¶ 43 The majority reasons that the purpose of mandatory arbitration is to reduce court congestion and delays in hearing cases. Majority at 583 (citing Nevers v. Fireside, Inc., 133 Wash.2d 804, 815, 947 P.2d 721 (1997); Haywood v. Aranda, 143 Wash.2d 231, 238, 19 P.3d 406 (2001)). The majority further instructs:
Without placing some limit on when a party can withdraw a request for trial de novo, one party is free to drag the case on by conducting discovery to see if his or her position improves or not. If it does not, the party can withdraw the request for a trial de novo knowing there is only a risk of having to pay additional attorney fees and costs (which are discretionary, not mandatory), but there is no risk of paying any further damages. Allowing unilateral withdrawal during trial would artificially alter the balance of power between the parties.
Majority at 583.
¶ 44 So, according to the majority, permitting a party to request a trial de novo, conducting some discovery, getting cold feet, and rescinding that request "is contrary to the purpose of avoiding congestion and delay...." Id. at 584. The conclusion that logically follows from that statement is that a party cannot conduct discovery and then rescind his or her request for a trial de novo. Thus, the majority's argument should lead it to hold Hapner cannot rescind his request after he begins to take discovery. Instead the majority concludes a party is permitted to request a trial de novo, fully conduct discovery, and then withdraw the trial request on the eve of trial. Id. at 583-84. How does that address the majority's concern that courts will be congested and trials delayed if "one party is free to drag the case on by conducting discovery to see if his or her position improves or not"? See id. at 583. The majority's justification does not support its holding.
¶ 45 Preventing a party from withdrawing a trial request at the commencement of discovery or trial increases court congestion. Once a party requests a trial de novo, court congestion and delays are reduced when the party rescinds its request at any time, whether it does so at the onset of discovery, during discovery, the eve of trial, or during the trial. Even if a party rescinded its request on the morning of the last day of trial, the court would be less congested for not *587 having to conduct trial on that final day.[1] The majority's deadline is inconsistent with reducing court congestion.
¶ 46 The majority insists that, although precluding withdrawal adds to court congestion in this case, precluding it in future cases "will serve as a disincentive to requests for a trial de novo for the purpose of delay." Id. at 584. Again, the stated justification for the majority's holding does not actually support it. First, the legislative purpose here was never to discourage a party from exercising its trial right if it so desired. RCW 7.06.070 (the mandatory arbitration provisions are not to "be construed to abridge the right to trial by jury."). The majority does not explain why it feels justified to do so here.
¶ 47 Oddly, the majority cites the Judicial Council Comment to MAR 7.3 (which was deleted by order of this court 20 years ago), which noted permitting a trial court to impose costs and attorney fees on a party that withdrew its trial request would discourage the party from requesting a trial de novo for the purpose of delay. Majority at 583-84. Thus, the rules already contain a mechanism to discourage requesting a trial de novo for inappropriate motive; the majority need not create another one.
¶ 48 The majority then continues: "Regardless of whether delay is specifically intended, delay is certainly the effect when, as here, the arbitration award remains unpaid and the party against whom the award was entered is permitted to pursue a trial de novo until he decides for strategic or tactical reasons that withdrawal from the trial de novo is the more advantageous course." Id. at 583-84 (emphasis added). This statement has no connection with the Judicial Council Comment to MAR 7.3. The Judicial Council Comment clarifies the trial court is permitted to impose cost and attorney fees to discourage parties from requesting a trial de novo "for the purpose of delaying enforcement of the award." (Emphasis added.) Of course delay occurs automatically when a party requests a trial, but according to the Judicial Council Comment, MAR 7.3 is intended to discourage such delay when delay is the purpose for requesting the trial, notas the majority spuriously suggestswhen the delay is the unavoidable effect of a good faith pursuit of a party's right to trial. The majority's overextension of the mandatory arbitration provisions place a chilling effect, not intended by the legislature, on a party's decision whether to exercise its right to a trial.
¶ 49 Second, without explanation or justification, the majority labels as a "misuse of the mandatory arbitration rules" a party requesting a trial and then rescinding that request upon determining its case is weaker than it believed. See majority at 584. But it is not only common in, but also a characteristic of, our trial system that a party can and will attempt to settle a case after learning through discovery that the facts are not as favorable as once believed. A party may similarly rescind its request for a trial after learning through discovery that the facts are not as favorable as believed. The majority speaks of maintaining "the balance of power between the parties," id. at 583, and this is a perfect example. Without mandatory arbitration, a party can conduct discovery and then settle; with mandatory arbitration, the party should still be permitted to conduct discovery before deciding to forgo its right to a trialdoing so is not a "misuse" of the mandatory arbitration rules, see majority at 584. Permitting a party to conduct discovery to flesh out its case retains the balance of power that existed prior to mandatory arbitration.
¶ 50 Instead, the majority condemns a party if it seeks discovery and realizes that its case is weaker than previously believed. See majority at 583-84. A fundamental purpose of discovery is to require both sides to exchange relevant information, which necessarily will affect each party's view of the strength of its case. Seeking discovery to determine the strength of one's case is no more a "misuse" of the mandatory arbitration rules than it is a "misuse" of the system as a wholethat is to say, it is no misuse at all.
¶ 51 Third, the majority's claim that preventing withdrawal of a trial request will *588 reduce court congestion is based upon unarticulated speculation. The majority concedes that its conclusion actually adds to court congestion in the case before us, but assumes future litigants (in cases for which we know neither the facts nor issues involved) will hereafter behave in a manner that will reduce court congestion. I presume the majority believes its holding will reduce the number of de novo trials by discouraging litigants from exercising their rights to a trial. See id. at 583-84. If that is the case, it was neither the intent of the legislature to circumvent a party's trial rights, as discussed above, see RCW 7.06.070, nor does the majority elaborate why it is confident its holding will have that effect on future litigants.
¶ 52 And the majority's holding, in practice, will not discourage a party from initially requesting a trial. Nothing about precluding a party from withdrawing the trial request after the trial has begun will discourage the party from requesting a trial de novo to conduct discovery.[2]See majority at 583. Under the majority's holding, parties are not discouraged from requesting a trial to conduct discovery and, according to the majority, "misuse" the process by "assessing the strength of the other party's case." See id. at 584. Under the majority, parties can take full discovery and, on the eve of trial, rescind the trial request. The majority's "solution" is all show and no go.
¶ 53 Adrift in a sea of half-developed and mostly irrelevant policy considerations, the majority makes one attempt to anchor its holding to the text of an applicable rule. The majority cites MAR 7.3: "The court may assess costs and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo." Majority at 582-83. The majority asserts the rule permits withdrawal only of a request for a trial de novo, not withdrawal from the actual trial. "Once a trial de novo is under way, it is no longer a matter of withdrawing a `request' alone." Id. at 583.
¶ 54 The majority's attempt to anchor its deadline to MAR 7.3 is rife with problems. The request for the de novo trial is the only basis for conducting the trial. Withdrawal of the request entails withdrawal from the trial.
¶ 55 But frankly, MAR 7.3 has little relevance here because it addresses "costs and attorney fees." The majority's demanding MAR 7.3 provide it a deadline for withdrawal is like ordering a steak at a vegetarian restaurantit doesn't matter that you want it; it's just not there.
¶ 56 Regardless, the majority abandons its MAR 7.3 argument when it applies, or rather fails to apply, its holding to the facts of this case. Clifford Hapner requested a trial de novo, received one, and lost. Hudson v. Hapner, noted at 126 Wash.App. 1057, 2005 WL 834433, at *1. However, the trial court improperly excluded the testimony of Hapner's expert. The Court of Appeals reversed and remained for a new trial. Id. at *5. Hapner then withdrew his request for a trial de novo before the start of the trial on remand. The majority offers no explanation or analysis why Hapner's withdrawal here is time-barred under its newly established deadline.
¶ 57 One might presume the majority views the beginning of the first trial, the verdict of which was subsequently reversed, as the cutoff for Hapner's withdrawal regardless of the later reversal. However, that conclusion is inconsistent with the majority's claim that its cutoff is justified by the language of MAR 7.3. Majority at 582-83. Because the trial on remand was not yet underway, Hapner was only withdrawing his request for a new trial; he was not requesting withdrawal from a trial itself. See id. Either the majority's nuanced reading of MAR 7.3 is correct, and Hapner can withdraw his trial request, or the majority's holding does not permit Hapner to withdraw his request prior to the trial on remand and MAR 7.3 does not support the majority's holding. Logic does not permit the majority to choose both.
¶ 58 The majority cites concerns over "the balance of power between the parties" to justify creating a deadline. Majority at 583. *589 But the relevant statute and rules already struck the balance between competing policy and party interests. The legislature weighed an individual's right to a trial by jury against concerns over court congestion and delays in civil cases. A citizen's right to a jury trial is fundamental, and the legislature treaded lightly to avoid discouraging a party from exercising its right. A party must file a request for a trial within 20 days after the arbitration decision, RCW 7.06.050, MAR 7.1(a), but that party is then permitted to unilaterally withdraw that request, RCW 7.06.060(1), MAR 7.3. The statute and rules permit a party to err on the side of requesting a trial.
¶ 59 And permitting a party to withdraw that request reduces court congestion. Here, Hapner's withdrawing his request saves the trial court from conducting an entire trial on remand.
¶ 60 The legislature was also mindful of the balance between the parties. "The court may assess costs and reasonable attorneys' fees against a party who voluntarily withdraws a request for a trial de novo...." RCW 7.06.060(1); accord MAR 7.3. A party pointlessly pursuing postarbitration litigation pays the costs of that pursuit, risking liability for all court costs and the attorney fees of both parties. Here, Hapner's withdrawal of his request for a trial de novo permits the trial court to award Lea Hudson any costs and fees incurred after the arbitration award was announcedcosts and attorney fees for discovery; the original, invalid trial; the subsequent appeal; any additional preparation that occurred for the trial on remand; and this appeal.[3]
¶ 61 Ultimately, the majority attempts to "fix" something that isn't broken. Reasonable people may argue there is a better way for chapter 7.06 RCW and MAR 7 to address this issue; they may argue the mandatory arbitration provisions should not provide such leeway to a party uncertain of whether he or she wishes to fully exercise his or her right to a jury trial. But there is no legal infirmity with how the provisions are written now, nor is any created because the provisions permit a party to withdraw its request for a trial at any time prior to a final verdict.
¶ 62 I would apply chapter 7.06 RCW and MAR 7 as written. Hapner was not precluded from seeking to withdraw his trial request. And, even under the majority's holding, Hapner should be permitted to withdraw his request because he made it before the start of the trial on remand.
¶ 63 I dissent.
WE CONCUR: JAMES M. JOHNSON and MARY E. FAIRHURST, Justices.
NOTES
[1] Hudson was awarded $10,500 in general damages and $4,037.97 in special damages. The award contained no amount for attorney fees or costs.
[2] The jury awarded $26,048 in past economic damages, $140,000 in future economic damages, and $126,250 in past and future noneconomic damages, for a total award of $292,298.
[3] RAP 14.2 instructs appellate courts to award costs and statutory attorney fees "to the party that substantially prevails on review" or, where neither party substantially prevails, to no one. RAP 18.1(b) also provides that the request for attorney fees must be in separate section of the party's opening brief and "should not be made in the cost bill."
[4] In the notice of presentment, Hapner offered to pay (1) the original arbitration award plus interest from the date of the filing of request for trial de novo, (2) attorney fees and taxable costs at trial de novo, and (3) attorney fees upon remand to the superior court. The offer excluded attorney fees and costs on first appeal to the Court of Appeals, which Hapner argues Hudson is not entitled to.
[5] Hudson requested the Court of Appeals modify its opinions in both Hudson I and Hudson v. Hapner, 146 Wash.App. 280, 187 P.3d 311 (2008) (Hudson II), "in order to award Plaintiff her [sic] all of her attorney fees and costs incurred since Defendants filed their Request for Trial de Novo in accordance with MAR 7.3." Resp't's Mot. for Recons. and Mot. to Modify at 1 (July 28, 2008).
[6] The Court of Appeals also found remedies at law adequate (and equitable remedies unnecessary) because "[h]ere, Hudson's remedy under MAR 7.3 is the original arbitration award, interest, and attorney fees and costs." Hudson II, 146 Wash.App. at 290, 187 P.3d 311. Hudson argues this statement is inconsistent with the Court of Appeals' own holdings that denied her attorney fees and costs on both appeals.
[7] MAR 7.3 was adopted in 1980 as part of the original rules on mandatory arbitration. This comment accompanied the rule to explain its purpose when the rule was first proposed. Effective September 21, 1989, this court ordered that all of the Judicial Council Comments be deleted from the mandatory arbitration rules in the official Rules of Court. The only reason provided was that the court had "`determined that the deletion of those comments will aid in the prompt and orderly administration of justice.'" 4A Karl B. Tegland, Washington Practice: Rules Practice 78 n. 17 (7th ed.2008). "[T]he comments remain a generally reliable guide to the intent of the drafters." Id.
[8] Hapner does not dispute that Hudson's request for costs and attorney fees incurred in proceedings before this court meets the requirements of RAP 18.1.
[9] In Tribble v. Allstate Property & Casualty Insurance Co., 134 Wash.App. 163, 174-75, 139 P.3d 373 (2006), the Court of Appeals held that a party claiming mandatory fees and costs under MAR 7.3 is entitled to all fees and costs from the entire proceedings (i.e., trial and appeals) after the trial de novo request was made. Tribble, 134 Wash.App. at 174-75, 139 P.3d 373. This means that if, after a second trial de novo, Hapner fails to improve his position, Hudson is entitled to fees and costs for both appeals and both trials.
[1] To clarify, that is not the case here. Hapner withdraw his trial request prior to the commencement of the trial on remand, and whether a deadline exists to preclude him from doing so is the only issue presently before this court. However, the above example demonstrates the inconsistency in the majority's argument.
[2] To the extent the majority is concerned with the "balance of power," see majority at 583, MAR 7.3 permits the trial court to "assess costs and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo." A party is not given free rein to explore the trial option at the other party's expense.
[3] I find no error in the majority's resolution of the costs to dateupholding the Court of Appeals award of costs to Hapner for prevailing on appeal, but recognizing that Hapner may ultimately be liable for the costs of the appeal as part of the trial court's assessment of costs and attorney fees under MAR 7.3.